United States District Court
Southern District of Indiana
Indianapolis Division

**Anthony Freeman**,

    Plaintiff,

v.

**Shellpoint Mortgage Servicing**,

    Defendant.

Case No.  1:21-cv-290

## Complaint and Jury Demand

Plaintiff Anthony Freeman bring this Complaint and Jury Demand against Shellpoint Mortgage Servicing, and states the following allegations and claims for relief:

## Parties

1. Plaintiff is a consumer as defined by Section 1681a(c) of the Fair Credit Reporting Act, 15 U.S.C. 1681, *et seq*. (the "**FCRA**").[1]

2. Shellpoint Mortgage Servicing ("**Shellpoint**"), is a "furnisher" of credit information as that term is defined by the FCRA.

## Jurisdiction

5. This lawsuit is brought pursuant to the FCRA and presents a federal question.  Therefore, jurisdiction arises under 28 U.S.C 1331 and 15 U.S.C 1681, *et seq.*

---

[1] Unless otherwise specified all "**Section**" references are to the FCRA.

6. Venue is proper within this district and division pursuant to 15 U.S.C. 1681p and 28 U.S.C. 1391(b).

## Factual Allegations

### Processing of Credit Information

7. The national consumer reporting agencies (Trans Union, Equifax and Experian) (collectively, the "CRAs") regularly receive information from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors and others. These sources are known as **"furnishers"** within the credit reporting industry and under the FCRA.

8. Shellpoint is a furnisher of credit information about Plaintiff to each of the CRAs.

9. The process by which CRAs receive, sort, and store information is largely electronic.

10. Furnishers report credit information to the consumer reporting agencies electronically on a periodic basis using an electronic format known as Metro 2.

11. The consumer reporting agencies take the credit information reported by these furnishers and create or associate consumer credit files.

12. Credit files are updated electronically by furnishers to reflect new information regarding the reported accounts (often referred to as "**tradelines**" within the industry).

13. When a furnisher wants to make a change to its reporting between reporting periods, a furnisher makes that change electronically using an electronic document known as an AUD or UDF (in some cases).

## Reinvestigation Procedures

14. When the CRAs receive a dispute from a consumer, the agencies investigate the dispute using an automated browser-based system called the Online Solution for Complete and Accurate Reporting ("**e-OSCAR**"). This system was designed to provide furnishers with an online solution for processing consumer disputes.

15. Through e-OSCAR, the CRAs send to the furnisher an Automated Credit Dispute Verification ("**ACDV**") which is supposed to include: the information the agency is currently reporting about the consumer and the credit information being disputed along with all relevant information about the consumer's dispute which the agency received from the consumer.

16. Through this ACDV, the agency asks the furnisher to investigate the information in question and determine whether the information that it is reporting to the agency is correct, complete and verifiable.

17. Through the ACDV, the furnisher is asked to verify that the indicative information (i.e. information such as name, current address, prior address, social security number, date of birth and phone number) the CRA has on the consumer matches the indicative information maintained in the furnisher's records; to verify that it is associated with the particular account being disputed; and to verify the accuracy of the tradeline information.

18. The furnisher is then supposed to return the ACDV to the CRA with the updated information (if any) relating to the consumer's credit history. In responding to an ACDV, a furnisher informs the agency that: (a) either the disputed information is "Verified"; (b) that the disputed information should be "Changed"; (c) or that the disputed item of information should be "Deleted". To do this the furnisher is asked to do nothing more than check a box.

19. If a furnisher chooses to verify the information it will check a box called "Verified As Reported." Once checked, this will instruct the consumer reporting agency that all information about the disputed item of information is, in fact, accurate and that no changes should be made.

20. If a furnisher chooses to change information, it will check a box called "Change Data As Shown" and then will input changes into the various fields of information that need to be changed.

21. Whenever a furnisher directs an agency to change information on a consumer's credit file, that furnisher affirms to the CRA that it has made the same changes in its own systems. This affirmation is made by the furnisher on the form used to process the dispute.

### Plaintiff's Shellpoint Mortgage Account

22. Shellpoint furnishes consumer account information to the CRAs.

23. At all times relevant, Shellpoint furnished a certain information regarding a mortgage between Plaintiff and Shellpoint (the "**the Account**") associated with the personal identifying information (i.e. information such as name, current address, prior address, social security number, date of birth and phone number) (the "**Indicative Information**") of Plaintiff.

24. At all times relevant, Shellpoint furnished the account to the CRAs with a negative payment history profile, account status and payment rating.

25. Plaintiff has never paid the Account late. Accordingly any derogatory payment history, status or rating furnished by Shellpoint regarding the account was/is inaccurate.

### Plaintiff's Disputes

26. Shellpoint furnished and continues to furnish the account inaccurately to the CRAs.

27. Plaintiff has disputed the accuracy of the Account with each of the national consumer reporting agencies on numerous occasions.

28. Each of the national consumer reporting agencies received Plaintiff's disputes and forwarded those disputes to Shellpoint.

29. During this time Plaintiff's credit scores suffered greatly.

30. Plaintiff has suffered adverse action (including, credit denial, delay in obtaining credit, and/or other such action) due to the inaccurately reported Shellpoint account based on consumer reports issued by Equifax, Experian and/or Trans Union.

31. These adverse actions and others caused Plaintiff considerable emotional distress, including frustration, embarrassment and humiliation.

32. Upon information and belief, the consumer reporting agencies processed Plaintiff's disputes by sending ACDVs to Shellpoint.

33. Upon information and belief, Shellpoint responded to those ACDVs by improperly verifying the inaccurately reported account information.

34. Other than sending an ACDVs to Shellpoint, the consumer reporting agencies did nothing to investigate the accuracy of the account.

35. Plaintiff spent many hours of time disputing the inaccurate reporting with Shellpoint and the consumer reporting agencies.

36. Plaintiff worked very hard and deliberately for years to maintain his excellent credit history.

37. The failures of the CRAs and Shellpoint too correct this reporting has caused Plaintiff a great amount of anxiety, has impaired his ability to obtain credit or to obtain it on favorable terms.

## Claim for Relief

### FCRA Violations by Shellpoint

38. This is a claim for violations of the federal Fair Credit Reporting Act.

39. Shellpoint furnished credit information about Plaintiff to the national consumer reporting agencies.

40. Shellpoint is subject to the requirements of the FCRA, including those duties set out in 15 USC 1681s-2(b).

41. At all relevant times, Shellpoint provided inaccurate, misleading and/or incomplete credit information to the consumer reporting agencies about Plaintiff. This inaccurate, misleading and/or incomplete credit information was reported by the consumer reporting agencies to Plaintiff'a potential lenders and others in a position of evaluating Plaintiff'a creditworthiness, credit standing, credit capacity, character and general reputation.

42. Plaintiff has notified the consumer reporting agencies of his disputes of the information being reported by Shellpoint. Upon information and belief, a form of Plaintiff's disputes and requests for reinvestigation were forwarded to Shellpoint by the consumer reporting agencies.

43. Information was available to Shellpoint that should have, upon a reasonable investigation, informed Shellpoint that its reporting of the Account was inaccurate, misleading and/or incomplete.

44. Shellpoint knows, should know or acts recklessly in not knowing that Plaintiff Account was being reported inaccurately.

45. There is no reasonable interpretation of credit reporting law that could justify Shellpoint's reporting of the account.

46. Despite its knowledge that the information being reported to Plaintiff's credit file was inaccurate, misleading and/or incomplete, Shellpoint repeatedly reported the information and repeatedly verified the information as accurate, knowing that by doing so Plaintiff's creditworthiness would be damaged.

47. Shellpoint has taken actions which violate the FCRA, specifically 15 USC 1681s-2(b). These actions include, but are not limited to, the following: (a) reporting inaccurate, misleading and/or incomplete information to the consumer reporting agencies regarding the mortgage account; (b) failing to fully, properly or reasonably investigate Plaintiff's requests for reinvestigation; (c) failing to review all relevant information regarding Plaintiff's requests for reinvestigation and/or disregarding that information after review; (d) after receiving notice of Plaintiff's requests for reinvestigation, continuing to submit inaccurate, misleading and/or

incomplete information to the consumer reporting agencies regarding the mortgage account; (e) failing to modify, delete or permanently block the reporting of credit information regarding plaintiff which Shellpoint knows to be inaccurate, misleading and/or incomplete; (f) failing to accurately respond to Plaintiff's requests for reinvestigation made through the consumer reporting agencies after receipt of those disputes.

48. Shellpoint knows that the information it provided to the consumer reporting agencies was false, inaccurate, misleading and/or incomplete.

49. As a proximate result of this conduct, Plaintiff suffered actual damages including, but not limited to, the loss of credit, loss of the ability to purchase and benefit from credit, damage to credit reputation, reduction in the credit limit or credit terms from at least one other creditor, mental and emotional pain, distress, anguish, humiliation, frustration, anxiety and embarrassment.

50. The acts and/or omissions of Shellpoint made in violation of the FCRA were willful, entitling Plaintiff to recover the remedies provided in 15 U.S.C. 1681n.

51. The acts and/or omissions of Shellpoint made in violation of the FCRA were negligently made, entitling Plaintiff to recover the remedies provided in 15 U.S.C. 1681o.

## Jury Demand

Plaintiff demands trial by jury.

## Request for Relief

Plaintiff respectfully requests that this Court enter judgment against Shellpoint for negligent and/or willful violations of the FCRA and award Plaintiff's actual damages, including damages for mental and emotional pain, distress, anguish, humiliation, frustration, anxiety and embarrassment and damage to credit reputation; statutory damages; punitive damages; costs and attorney's fees. Plaintiff further requests such other relief as the Court deems just and proper.

Respectfully submitted,

*/s/Guerino Cento*
Guerino Cento
CENTO LAW
5666 Carrollton Avenue
Indianapolis, Indiana 46220
(317) 908-0678
cento@centolaw.com